HUGH A. WILSON AND ELMORE YOUNG, *Plaintiffs in Error,* v. M. M. KNIGHT, MARIE E. WILLIAMS AND HER HUSBAND, THEODORE WILLIAMS, JULIA HERRING AND HER HUSBAND, W. W. HERRING, AND MARY J. BUCKANNAN, HEIRS AT LAW OF JOSEPH JACKSON KNIGHT, DECEASED, *Defendants in Error.*

SPANISH GRANTS—PRESCRIPTIVE TITLE—STATUTE OF LIMITATIONS.

A grant of land made by the Spanish government in 1817 to a private individual was surveyed, located and platted in 1819, and, as so located, surveyed and platted, was adjudged, on November 24th, 1834, to be a valid grant that vested the title absolutely in fee in the said grantee and his heirs and assigns *in presenti,* by a decree of the Superior Court of the District of East Florida, in a suit wherein the assignees of said grantee were complainants and the United States of America was defendant, and such decree of the Superior Court was subsequently, on February 6th, 1836, in all things affirmed by the Supreme Court of the United States. By a supplemental decree made in said cause by the District Court of the United States for the Northern District of Florida on April 10th, 1882, on the application of the assignees of said grantee, land script of the United States was, on November 20th, 1883, issued to such assignees for the full area of said grant, in full satisfaction of said grant, which script was subsequently located upon other lands of the United States outside the limits of said grant. The United States District land office in 1847, by mistake permitted a cash entry to be made by one Knight of a part of the land embraced in said Spanish grant, which entry was subsequently suspended by the United States General Land Office because of the discovery of such mistake. The said Knight

shortly after his said cash entry took possession of and settled upon the land embraced in his said entry, and continued to reside upon and possess same until 1853 or 1855, when he died. The heirs at law of said Knight, shortly after his death, lost possession and control of the land embraced in his entry, and continuously ever afterwards remained out of the possession and control thereof without protest or any effort or attempt to oust other third parties who had obtained possession and control thereof until subsequently to April 30th, 1896. One Niblack, then in possession and control thereof, on September 13th, 1867, conveyed by deed to one Pemberton as trustee a part of the land embraced in the said Knight entry which part embraces the plot of ground in controversy; and the *cestui que trust* of said Pemberton at once went into actual possession of the land embraced in the deed to him and continuously remained in possession thereof until December 17th, 1870, when the lot in controvesy was sold and conveyed by deed executed by the said Pemberton and his *cestui que trust* to one Mrs. Miller who at once took possession thereof and continuously held such possession until February 21st, 1887, when she sold and conveyed the same to the defendant below, who at once went into posses-sion thereof and has continuously held such possession until the present time. The United States on April 30th, 1896, re-moved the suspension of the said Knight entry and issued a patent to the said Knight for the land embraced in his said entry. In an action of ejectment instituted by the heirs of said Knight subsequently to the issuance of said patent against the defendant below for recovery of the said lot in controversy, *Held*, under the facts stated: (1) That the Spanish grant when confirmed by the United States courts vested in the grantee and his heirs and assigns an absolute title in fee *in presenti*, and consequently that the attempted sale by the United States Land Officers of a part of such grant in 1847, was a nullity.

(2) That the United States did not acquire any property right in such Spanish grant until November 20th, 1883, when it issued to the assignees of such grant United States land script in payment therefor; and that the United States thus and then became the owner by purchase of such title to said grant, and of such title only, as such assignees then had to convey.

(3) That by such purchase the United States did not acquire title to any part of such Spanish grant the title to which had been pre-viously acquired, by prescription or otherwise, by third persons not parties or privies to such sale to the United States, and,

consequently, could not effectually convey title to any such part or portion by patent or otherwise.

(4) That such Spanish grant being the property of private individuals in February, 1872, when our statute of limitations (chap. 1869, laws) was enacted, limiting the time to seven years for the acquirement of a prescriptive title, such statute of limitation was operative as against the then private owners of such grant from the date of its enactment on February 27th, 1872, and that by virtue of such statute a prescriptive title could have been acquired and perfected to the whole or part of such grant prior to its purchase by the United States in November, 1883.

(5) That the defendant and his grantors having been in the actual, continuous, open and adverse possession of the land in dispute for more than seven years prior to the acquirement by the United States in 1883, of any property rights therein, became possessed of a perfected prescriptive title thereto under said statute of limitations of 1872, and, consequently, that the subsequent patent by the United States in 1896 to said Knight was ineffectual to convey title as against such prior perfected prescriptive title.

This case was decided by Division A.

Writ of error to the Circuit Court for Columbia county.

The facts in the case are stated in the opinion of the court.

*A. J. Henry* and *T. B. Oliver* for plaintiffs in error.

*B. H. Palmer* for defendants in error.

TAYLOR, C. J.—In March, 1900, the defendants in error, as heirs at law of Joseph Jackson Knight, deceased, instituted their action of ejectment against the plaintiffs in error in the Circuit Court of Columbia county for the re-recovery of a certain lot of land located in the southern division of the town of Lake City, in section 32, township 3, range 17 south and east in said Columbia county, contain-

ing three-fourths of an acre. The cause was referred to a practicing attorney as referee for trial, and on the 26th day of March, 1902, the referee found in favor of the plaintiffs that they had a fee simple interest and estate in and to the said land, and were entitled to recover possession thereof, and were entitled to *mesne* profits from the date of the institution of their suit, and entered judgment in conformity to such findings.

To this judgment the defendants below have sued out writ of error from this court.

The defendants moved for new trial, on the grounds, among others, (1) because the said findings and judgment are contrary to the evidence, and (2) because said findings and judgment are contrary to law. The denial of this motion is one of the errors assigned.

From the conclusions reached by us as to the law applicable to the facts in proof, an adjudication of this assignment of error will effectually dispose of the case upon its merits, without regard to other assignments of error made, we will consider and discuss this assignment alone.

The following facts are established by the evidence, and are practically admitted and unquestioned: 1. That the land in controversy is a part of a 20,000 acre grant of land made by the Spanish government on March 20, 1817, to one Don Jose de la Maza Arredondo.

2. That this 20,000 acre grant, as surveyed and platted by one Andres Burgevin in 1819, was conveyed by the administrator of said Arredondo to one Benjamin Chaires, on the 16th of February, 1829, with the exception of certain undivided parcels thereof that had prior to that date been conveyd by the estate of Arredondo to one Pedro Miranda, and to one Gad Humphreys.

3. That said 20,000 acre Spanish grant to Arredondo as surveyed, located and platted by the said Burgevin, on November 24, 1834, was adjudged to be a valid grant, vest-

ing the title absolutely in fee in the said Arredondo and his heirs and grantees *in presenti,* by a decree of the Superior Court of the District of East Florida, in a suit wherein the said Chaires, Miranda and Humphreys, as grantees of said Arredondo, were complainants and the United States of America was defendant; from which decree an appeal was taken on behalf of the United States to the Supreme Court of the United States, where the said decree of the Superior Court was in all things affirmed, on February 6, 1836 (*United States v. Chaires,* 10 Pet. 308; 3 How. 611).

4. By a supplemental decree rendered in the District Court of the United States for the Northern District of Florida, on the 10th day of April, 1882, in the suit of Benjamin Chaires *et al.,* claimants to said Arredondo grant against the United States, on the application of counsel for said claimants, it was decreed that scrip for 20,000 acres of land, receivable in payment for any of the public lands in Florida that had been offered at public sale, should be issued to the parties entitled to said Arredondo grant in lieu of and in full satisfaction of said grant, and that said grant should thereafter be held and taken as a part of the public lands of the United States. That such land scrip was subsequently, on November 20, 1883, duly issued to said claimants, and other lands purchased therewith outside of said grant, and the grant thus satisfied.

5. The United States District Land Office, then located at Newnansville, Florida, on March 1st, 1847, in the mistaken belief that the same was public land of the United States subject to entry and sale as such, sold to Joseph Jackson Knight for cash the S. W. ¼ of N. E. ¼, N. W. ¼ of S. E. ¼ and E. ½ of S. W. ¼ of section 32, township 3, south range 17, east, embracing the land in dispute herein, and the same being part of said 20,000 acre Spanish grant to Arredondo; the then receiver of said District Land Office issuing to the said Knight on March 1st, 1847, a re-

ceiver's receipt for the amount then paid, and the then register of said District Land Office at the same time issuing to him a register's certificate to the effect that the amount of money then paid by the said Knight was in full payment for the purchase of said land last above described, and that on presentation of such certificate to the commissioner of the General Land Office the said Knight should be entitled to receive a patent for the said described land. The general land department at Washington subsequently finding that this, among other entries that had been allowed by the District Land Office, was covered by said Arredondo grant, suspended the same, and it continued so suspended until April 3, 1896, when, for the purpose of perfecting title to the land of the Florida Agricultural College, located on a part of said Knight entry, the suspension of the Knight entry was revoked by letter of date April 3, 1896, from the Secertary of the Interior, addressed to the Commissioner of the General Land Office, and the commissioner was thereby directed to issue patent to said Joseph Jackson Knight for the land embraced in his entry of March 1st, 1847, and in pursuance of this letter, a patent from the United States to Joseph Jackson Knight for the said land embraced in his said entry was issued on the 30th day of April, 1896.

Joseph Jackson Knight settled upon the land embraced in his entry shortly after its entry, and resided there with his family until 1853 or 1855, when he died. How the heirs of Joseph Jackson Knight after his death lost possession and control of the land covered by his entry, there is no formal proof in the record, but the proof does show that shortly after his death his heirs did lose possession and control thereof, and that it passed into the possession and control of other parties, and that they did not assert or make any claim thereto from that time until after the issuance on April 30th, 1896, of the patent thereto by the United States.

6.   The proofs show that on the 13th of September,
A. D. 1867, one Silas L. Niblack was in possession and con-
trol of that part of the Knight entry that embraces the lot
in controversy herein, claiming title thereto, for on that
date he conveyed a tract of fifty acres thereof, embracing
the lot in controversy, to one T. W. Pemberton in trust for
one Anna M. Long.   Where Niblack got his title, if any,
the record does not show by any formal proof.   The proof
shows that the *cestui que trust* Anna M. Long held posses-
sion of the land conveyed by this deed from Niblack, until
about the 17th day of December, A. D. 1870, when three
and one-half acres thereof, embracing the land in con-
troversy, were conveyed by deed of that date from T. W.
Pemberton as trustee, and Anna M. Long, his *cestui que
trust,* to Mrs. Jacob C. Miller.   The last named grantee
went into actual possession and occupancy under her deed
and continuously occupied and adversely held the same
until about the 21st day of February, A. D. 1887, when she
sold and conveyed by deed of that date to Hugh A. Wilson,
the plaintiff in error, defendant below, one and one-quarter
of an acre, being the land in controversy, under which deed
the defendant went into actual adverse possession, con-
tinuously holding such adverse possession up to the present
time.   The proofs further show that ever since the con-
veyance of the fifty acre tract by Niblack to Pemberton,
trustee, embracing the land in controversy, in the year
1867, Niblack's grantee and those holding paper title under
them, including the defendant below, have continuously
been in actual adverse possession of the land up to the pres-
ent time, and that the heirs of Joseph Jackson Knight, or
some of them, during the greater part of that time resided in
the near vicinity of the lands and must have known of its
occupancy, improvement and adverse holding under claim
of right by the parties so holding the same, and yet they
asserted no sort of claim or title thereto, permitting divers

conveyances thereof without protest of any kind, until after the isssuance of the patent by the United States to their deceased ancestor, dated April 30, A. D. 1896.

Under these circumstances we hold, 1st, that the grant of 20,000 acres from the Spanish government in 1817 to Joseph de la Maza Arredondo, when confirmed, vested the title *in presenti* in said Arredondo, and that the United States did not acquire any property right in or to the land covered by such grant under the treaty of cession of the Floridas in 1819. *McGee v. Alba,* 9 Fla. 382; *Doe ex dem. Magruder v. Roe,* 13 Fla. 602. And, consequently, that the attempted sale by the land officers of the United States to Joseph Jackson Knight in 1847 of a part of such grant was a nullity.

2nd. That the United States did not acquire any property right in or to such Spanish grant until November 20, 1883, when land scrip was issued in lieu thereof by the United States to the then claimants of said grant, under and by virtue of the decree of the District Court of the United States for the Northern District of Florida of date April 10th, 1882. That the United States thus and then became the owner by purchase of such title, and such title only, as such claimants then had to convey.

3rd. That by such purchase the United States did not acquire title to any part or portion of such grant the title to which had been previously acquired, by prescription or otherwise, by third persons not parties or privies to such sale to the United States; and consequently, could not effectually convey title to any such part or portion by patent or otherwise.

4th. That such Spanish grant being the property of private individuals in February, 1872, when our statute of limitatons, Chapter 1869, laws of Florida, was enacted, limiting the time to seven years for the acquirement of a prescriptive title, such statute of limitation was operative

as against the then private owners of such Spanish grant from the date of its passage on February 27th, 1872, and that by virtue of such statute of limitations a prescriptive title could have been acquired and perfected to the whole or part of such grant prior to its purchase by the United States in November, 1883.

5th.    That the defendant and his grantors having been in the actual, continuous, open and adverse possession of the land in dispute herein for more than seven years prior to the acquirement by the United States in 1883 of any property rights in such land, became possessed of a perfected prescriptive title thereto under said statute of limitations of 1872, before the United States acquired any property rights therein; and, consequently, that the subsequent patent by the United States in 1896 to Joseph Jackson Knight was ineffectual to convey title as against such prior perfected prescriptive title. *Joplin v. Chachere,* decided by the Supreme Court of the United States, October term, 1903, 192 U. S. 94.

Other errors are assigned upon the admission and rejection of evidence, which we deem it unnecessary to notice further than to say that all documentary and other evidence that tended to establish the facts stated and enumerated herein above, were properly admissible.

The judgment of the court below is hereby reversed and a new trial awarded at the cost of the defendants in error.

HOCKER and COCKRELL, JJ., concur.

CARTER, P. J., and SHACKLEFORD and WHITFIELD, JJ., concur in the opinion.